The Law Office of James M. Branden
80 Bay Street Landing, Suite 7J
Staten Island, New York 10301
Tel. 212-286-0173
Fax 212-481-8250

January 3, 2025

Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:  United States v. Olabanji Otufale, et ano.
             Cr. Docket No. 24-170 (KAM)

Dear Judge Matsumoto:

    I represent Marc Lazarre, who is to be sentenced in the above-referenced matter on January 23, 2025, at 11:00. For the reasons set forth below, Mr. Lazarre should be sentenced to a term of imprisonment of two years.

**STATEMENT OF THE CASE**

<u>Background</u>

    Mr. Lazarre is the eldest of four children born to Jean and Marie Lazarre.[1] Jean was employed at Steinway & Sons, the piano manufacturer, and Marie was a nurse. Both are now retired. Mr. Lazarre's siblings are gainfully employed (PSR. ¶67).

    Mr. Lazarre was raised in Canarsie, then a low-to-middle income, relatively crime-free section of Brooklyn (PSR. ¶68). Perhaps because he was the eldest of the children, and despite well-meaning parents, Mr. Lazarre was a "troublemaker" with "personal issues when he was young" (PSR. ¶¶68-69). Nonetheless, he managed to graduate from Brooklyn Comprehensive Night High

---

[1] According to Mr. Lazarre, his parents are both 69, not 67, years old (PSR. ¶66).

Hon. Kiyo A. Matsumoto
United States District Judge
January 3, 2025
Page 2

School more or less on time, and completed one semester of higher education at the New York Career Institute of New York before reaching the firm conclusion that school was "not for him" (PSR. ¶77).

Following his education, and when not in jail or prison (see "criminal history" below), he was employed from 2008 to 2022 in a series of off-the-books, odd jobs, in retail, construction, and delivery services. Beginning in 2020, he also managed various rap artists (PSR. ¶79).

Mr. Lazarre has been detained at the Essex County Correctional Facility since October 2022 (PSR. ¶71).[2] While there, he has suffered from anxiety, food intolerance and stomach discomfort. The anxiety manifested itself in chest pains, headaches and fainting spells. Due to severe diarrhea, he has been constrained to restrict his diet and is only now, more than two years in, stabilized (PSR. ¶73).

Mr. Lazarre has no history of mental illness or substance abuse, though he drinks socially and has used marijuana on occasion (PSR. ¶75).

Mr. Lazarre has one son, Malachi Boone, who is 20, not 21, and lives with his mother (PSR. ¶69).

Criminal History

From 2003 to 2007, between the ages of 18 to 23, Mr. Lazarre was convicted of five minor offenses, none of which resulted in criminal history points (CHP) under the Sentencing Guidelines (PSR. ¶¶36-40).

In 2008, at the age of 23, Mr. Lazarre was arrested for and convicted of attempted burglary (though the specific allegations appear more akin to a violation of a protective order by calling and sending letters to an ex-girlfriend). The felony offense resulted in a term of imprisonment of three years. This offense

---

[2] At the time of his arrest, Mr. Lazarre was residing in New Jersey but his permanent address is 9232 Kaufman Place, Brooklyn, NY 11236, where his parents also reside (PSR. ¶7, information page).

Hon. Kiyo A. Matsumoto
United States District Judge
January 3, 2025
Page 3

results in 3 CHP (PSR. ¶41).

In 2009, at the age of 24, Mr. Lazarre was convicted of another felony, criminal possession of stolen property in the fourth degree, specifically a vehicle that was left running and briefly abandoned. He was sentenced to a term of imprisonment of 18 months. This offense also results in 3 CHP (PSR. ¶42).

Mr. Lazarre was discharged from parole for the above offense in January 2009 (PSR. ¶42). Late that same year, Mr. Lazarre was arrested for possession of a forged instrument, a misdemeanor, and later sentenced to six months' jail. This offense results in 2 CHP (PSR. ¶43).

Between his arrest and conviction in the above offense, Mr. Lazarre was arrested for petty larceny, a misdemeanor. He was sentenced to ten days' custody. This offense results in 1 CHP.

In 2013, at the age of 28, Mr. Lazarre was arrested for attempted possession of a forged instrument, a felony. He was sentenced to 18-36 months' imprisonment. This results in 3 CHP (PSR. ¶45).

Mr. Lazarre was released from custody for the above offense in May 2015 (PSR. ¶45). Nine months later, at the age of 31, he was convicted of a misdemeanor offense of possession of a forged instrument and sentenced to time served. This offense results in 1 CHP (PSR. ¶46).

The above were all New York State offenses.

Since then, beginning in 2016 and continuing through 2021, Mr. Lazarre has been convicted of offenses in other States. Specifically, he was convicted of: illegal sale of a credit card in Connecticut, a misdemeanor, resulting in 2 CHP; obtaining money or signature by false pretenses in Virginia, a felony, resulting in 3 CHP;[3] identity theft in Pennsylvania, a felony, resulting in 3 CHP; fraudulent use of identifying information in Texas, which it

---

[3] Mr. Lazarre believes that the offense listed in PSR. ¶48 resulted in a three-year term of non-reporting probation, not three years' custody. Even were that so, he would remain in the same criminal history category.

Hon. Kiyo A. Matsumoto
United States District Judge
January 3, 2025
Page 4

appears was reduced to a misdemeanor, resulting in 1 CHP; and knowingly exhibiting a false government issued document or ID in New Jersey, also apparently reduced to a misdemeanor, resulting in 1 CHP (PSR. ¶¶47-51).

Mr. Lazarre thus has a total of 23 CHP and is in criminal history category VI.

Charges are also pending in various jurisdictions. Specifically, Mr. Lazarre is charged with: theft by deception and other charges in North Arlington, New Jersey; forgery and marijuana possession in Akron, Ohio; criminal possession of a firearm, a felony, and other charges in Kings County, New York; and bank fraud conspiracy and aggravated identity theft, felonies, in federal court in Newark, New Jersey (PSR. ¶¶55-58).[4]

The Offense Conduct and the Sentencing Guidelines Calculation

On July 15, 2024, Mr. Lazarre pleaded guilty to wire fraud conspiracy, in violation of 18 U.S.C. §§1343/1349, and aggravated identity theft, in violation of 18 U.S.C. §1028A(a)(1).

As to the underlying facts, in October 2020, Mr. Lazarre's co-defendant, Olabanji Otufale, was employed by the Department of Human Services (DHS) in New York, and, in that capacity, he had access to personally identifiable information (PII) – such as names, social security numbers, birth dates, etc. – of "clients" seeking services from DHS. Without their knowledge or permission, Otufale transferred the PII in the DHS data bank of clients to Mr. Lazarre, who used that information to apply for unemployment benefits with New York's Department of Labor (DOL). As a result of their efforts, one debit card was obtained by Mr. Lazarre with a $182 balance and purchases were made with that card on two dates in late October. In all, the offense lasted approximately two weeks and DOL's total loss was $182 (PSR. ¶¶9-11).

According to the Office of Probation the total offense level was 9 (PSR. ¶34). Mr. Lazarre objects to the two-level enhancement for ten or more victims as per USSG §2B1.1(b)(2)(A)(i) (PSR. ¶¶10,

---

[4] The pending, guilty plea offer for the federal case in New Jersey (attached) anticipates a Sentencing Guidelines range of imprisonment of 12-16 years.

Hon. Kiyo A. Matsumoto
United States District Judge
January 3, 2025
Page 5

12, 13, 22). He believes that, at most, the PII of eight DHS clients was misappropriated. For the reasons addressed in the ARGUMENT section below, he also objects to the vulnerable-victim enhancement as per USSG §3A1.1(b)(1) (PSR. ¶23).

**ARGUMENT**

GIVEN THE BRIEF TERM OF THE OFFENSE, AND THE RESULTING LOSS OF JUST $182, A MANDATORY TERM OF IMPRISONMENT OF TWO YEARS IS JUST PUNISHMENT AND PROVIDES GENERAL AND PERSONAL DETERRENCE

Pursuant to 18 U.S.C. §3553(a)(2), this Court is required to "impose a sentence sufficient, but not greater than necessary" to comply with generally recognized purposes of sentencing, including the need:

> A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> B)  to afford adequate deterrence to criminal conduct;
>
> C)  to protect the public from further crimes of the defendant; and
>
> D)  to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Among other things, the sentencing court is also required to consider: the Sentencing Guidelines, the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. §§3553(a)(1), (a)(4), (6).

As to the Sentencing Guidelines, two levels are added if a victim of the offense was "vulnerable," defined as: one who is "unusually vulnerable due to age, physical or mental condition, or

Hon. Kiyo A. Matsumoto
United States District Judge
January 3, 2025
Page 6

who is otherwise particularly susceptible to criminal conduct." See USSG §3A1.1, App. Note 2. Persons looking for services from DHS, even those seeking placement in homeless shelters, are not "vulnerable victims" for at least three reasons.

First, the victim here was the DOL, not the persons seeking DHS services, who were apparently random and certainly unharmed. See United States v. Gieger, 190 F.3d 661 (5th Cir. 1999) (the U.S. government cannot be considered a vulnerable victim). See also United States v. Rainford, 110 F.4th 455, 484 (2d Cir. 2024) (enhancement appropriate where organizers of slip-and-fall fraud took advantage of "recruits'" economic vulnerability "to lead them to undertake serious physical [risks, including unnecessary surgeries] and legal risks"); United States v. Borst, 62 F.3d 43, 48 (2d Cir. 1995) (unwitting instrumentalities could be vulnerable victims only if they were exploited and suffered harm). Second, and assuming *arguendo* that DHS clients can be considered victims, in its application of the §3A1.1 enhancement, the Probation Office did not indicate that Mr. Lazarre was in receipt of PII that showed vulnerability based on age, condition, or susceptibility, and there was no reason Mr. Lazarre somehow "should have known" of such. In this regard, it bears noting that the vulnerable victim enhancement must be based on the victim's individual characteristics rather than membership in a particular class, such as, in this case, clients in a DHS data bank. See United States v. Angeles-Mendoza, 407 F.3d 742 (5th Cir. 2005) (reversing enhancement because illegal aliens from Mexico were not unusually vulnerable to the crime of alien smuggling); United States v. Castellanos, 81 F.3d 108 (9th Cir. 1996) (nothing in the record indicated that Hispanics share some "unique susceptibility to fraud"). See also Jay Dyckman, *Brightening the Line: Properly Identifying a Vulnerable Victim for Purposes of §3A1.1 of the Federal Sentencing Guidelines*, 98 Colu. L. Rev. 1960 (1998) (courts should draw a brighter line to ensure that the enhancement is not manipulated simply as "a means of punishing defendants for victimizing persons who evoke sympathy or have suffered greatly"). Third, the facts of this case are closest to the third of four examples in Application Note 2, finding inapplicable the enhancement in a fraud-by-mail-to-the-general-public case where one victim just happened to be senile.

Absent the USSG §3A1.1 enhancement, the total offense level is 7, resulting in an advisory term of imprisonment of 15-21 months for a criminal history category VI offender. Plus, the aggravated identity count requires a 24-month consecutive term of

Hon. Kiyo A. Matsumoto
United States District Judge
January 3, 2025
Page 7

imprisonment, for a total range of 39-45 months' imprisonment.[5]

As to the nature and circumstances of the offense, this was *de minimus*. During COVID, many people made enormous illegal profits under the CARES ACT. See e.g. June 17, 2024 letter from Andrea LaBarge, Audit Manager at the N.Y. Office of the State Comptroller to Roberta Reardon, DOL Commissioner noting that legislation in response to the pandemic "increased the risk of improper unemployment insurance (UI) payments through fraud," and that from 4/1/21 to 3/31/22, the "estimated fraud rate in New York's UI program increased to 17.59% – up from 4.51% just two years earlier"); Nov. 15, 2022 Press Release from State Comptroller DiNapoli as to audit of UI payments from 1/2020 to 3/2022, $11 billion lost to fraud in FY 20-21, and that was a likely "understatement"). Mr. Lazarre, in just two weeks, made all of $182, and, ultimately, hurt no one but himself.

As to offender characteristics, Mr. Lazzare's criminal history seems most important. While extensive, it is mostly littered with misdemeanors and low-level felonies, the worst of which carried terms of imprisonment of three years. Now, in combination with the federal case pending in New Jersey, he faces roughly 15 to 19 years imprisonment, all for similar conduct that, for the most part, resulted in state courts with fines, or days and months of jail. As such, he is now facing his first significant – indeed, double-digit – prison term.

Given all this, the offense – non-violent, non-drug, non-gang, non-weapon, non-sex – must be among the least severe this Court has faced, with a fraud loss of just $182. The mandatory consecutive term for aggravated identity theft most surely covers that. For the same reason, the mandatory term of imprisonment alone will provide general deterrence. Plus, in connection with what can be expected to happen in New Jersey Federal Court – an additional 12-16 years' imprisonment with a guilty plea and more following a guilty jury verdict – Mr. Lazarre may "go away" for twenty or so

---

[5] Further, if Mr. Lazarre is correct that, as a factual matter, there were only eight or fewer victims, then the total offense level is 5, carrying a range of imprisonment of 9-15 months, plus 24 months on the aggravated identity count, for a total of 33-39 months.

Hon. Kiyo A. Matsumoto
United States District Judge
January 3, 2025
Page 8

years. That should take Mr. Lazarre "out of the game" and protect the public from further crimes by him.

At bottom, while this was yet another concerning act by Mr. Lazarre, it fits within his least egregious offenses, which have previously resulted in fines or short sentences. Two years is sufficient to comply with 18 U.S.C. §3553(a)(2). Plus, later, the District of New Jersey will have discretion to accommodate for any leniency this Court may bestow, should it be deemed necessary.

## CONCLUSION

For the foregoing reasons, Mr. Lazarre should be sentence to two years' imprisonment.

Respectfully submitted,

James M. Branden
Attorney for Marc Lazarre

Enc.



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

Matthew J. Belgiovine
Assistant United States Attorney

MJB/PL AGR
2022R00102

402 E. State Street
Trenton, New Jersey 08608

973.856.9179
Matthew.Belgiovine@usdoj.gov

June 18, 2024

Julian Wilsey, Esq.
The Dratch Law Firm, P.C.
354 Eisenhower Parkway
Plaza Two
Livingston, New Jersey 07039

Re: <u>Plea Agreement with Marc Lazarre</u>

Dear Mr. Wilsey:

This letter sets forth the plea agreement between your client, Marc Lazarre ("Lazarre"), and the United States Attorney for the District of New Jersey ("this Office"). This offer will expire on **July 15, 2024**, if it is not accepted in writing by that date. If Lazarre does not accept this plea agreement, his sentencing exposure could increase beyond what is discussed in this plea agreement as a result of this Office's investigation.

<u>Charges</u>

Conditioned on the understandings specified below, this Office will accept a guilty plea from Lazarre to Counts One through Five of the Indictment, Criminal No. 23-356, which charges Lazarre with (i) conspiring with Fritzgerald Steide, Mohammed Khan, Andrea Lewis, and others (collectively, "the Coconspirators") to commit bank fraud, contrary to Title 18, United States Code, Section 1344, in violation of Title 18, United States Code, Section 1349 (Count One); (ii) committing bank fraud, in violation of Title 18, United States Code, Section 1344 (Count Two); and (iii) three counts of aggravated identity theft, in violation of Title 18, United States Code, Section 1028A (Counts Three through Five). If Lazarre enters a guilty plea and is sentenced on this charge, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further criminal charges against Lazarre for conspiring to commit, and committing, bank fraud and aggravated identity theft from in or around September 2019 through November 2022. But if a guilty plea in this matter is not entered for any reason or a guilty plea or judgment of conviction entered in accordance with this agreement does not remain in full force and effect, this Office may reinstate any dismissed charges and initiate any other

(4) must order forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 and 18 U.S.C. § 982;

(5) pursuant to 18 U.S.C. § 3583, may require Lazarre to serve a term of supervised release of not more than five years on each of Counts One and Two and not more than one year on Counts Three, Four, and Five, which will begin at the expiration of any term of imprisonment imposed. Should Lazarre be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, Lazarre may be sentenced to not more than three years' imprisonment on each of Counts One and Two and not more than one year on each of Counts Three, Four, and Five, in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

Restitution

Pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, Lazarre agrees to pay full restitution to the victims of the offenses charged in Counts One through Five of the Indictment in an amount that fully compensates the victim for the losses sustained as a result of that offense, as determined by the Court.

Forfeiture

As part of his acceptance of responsibility, Lazarre agrees to forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(2)(A), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly as a result of the offense charged in Counts One and Two, and all property traceable to such property.

Lazarre further agrees that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, and that the United States is therefore entitled to forfeit substitute assets equal to the aggregate value of the forfeitable property described above (the "Money Judgment"). Lazarre consents to the entry of an order requiring the defendant to pay the Money Judgment, in the manner described below (the "Order"), which may be satisfied in whole or in part with substitute assets.

All payments made in full or partial satisfaction of the Money Judgment shall be made by (i) electronic funds transfer, as directed by the Office; or (ii) postal money order, bank, or certified check, made payable in this instance to the United States Marshals Service, indicating the defendant's name and case

### Stipulations

This Office and Lazarre will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement. Both parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations. Nor do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

This agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it believes materially conflicts with a Schedule A stipulation, that stipulation shall no longer bind this Office. A determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation.

If the sentencing court rejects a Schedule A stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court did so properly. Finally, to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence.

### Waiver of Appeal and Post-Sentencing Rights

As set forth in Schedule A and the paragraph below, this Office and Lazarre waive certain rights to appeal, collaterally attack, or otherwise challenge the judgment of conviction or sentence.

### Immigration Consequences

Lazarre understands that, if he is not a citizen of the United States, his guilty plea to the charged offenses will likely result in Lazarre being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible, or ending his naturalization. Lazarre understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. Lazarre wants and agrees to plead guilty to the charged offenses regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. Lazarre understands that he is bound by this guilty plea regardless of any immigration consequences. Accordingly, Lazarre waives any right to challenge the guilty plea, sentence, or both based on any immigration consequences. Lazarre also agrees not to seek to withdraw this guilty plea, or to file a direct appeal, or any kind of collateral attack challenging the guilty plea,

      I have received this letter from my attorney, Julian Wilsey, Esq. I have read it. My attorney and I have reviewed and discussed it and all of its provisions, including those addressing the charges, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:


_____           Date:
Marc Lazarre


      I have reviewed and discussed with my client this plea agreement and all of its provisions, including those addressing the charges, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. My client understands this plea agreement fully and wants to plead guilty pursuant to it.


_____           Date:
Julian Wilsey, Esq.
Counsel for Defendant

11.    Thus, the total offense level for Count Two is 35.

### Counts Three through Five – Aggravated Identity Theft

12.    Because the Defendant is pleading guilty to three violations of 18 U.S.C. § 1028A, he faces a mandatory consecutive sentence of two years' imprisonment per count, except that each two-year sentence imposed pursuant to 18 U.S.C. § 1028A may run concurrently.

13.    The offense level is determined largely on the basis of total loss, and thus Counts One and Two group. U.S.S.G. § 3D1.2(d). Accordingly, the Adjusted Offense Level for Counts One and Two is 35.

14.    An upward adjustment of 4 levels applies because Lazarre was an organizer and leader of criminal activity that involved five or more participants. See U.S.S.G. § 3B1.1(a).

15.    As of the date of this letter, Lazarre has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the offense charged. Therefore, a downward adjustment of 2 levels for acceptance of responsibility is appropriate if Lazarre's acceptance of responsibility continues through the date of sentencing. See U.S.S.G. § 3E1.1(a).

16.    As of the date of this letter, Lazarre has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting this Office to avoid preparing for trial and permitting this Office and the court to allocate their resources efficiently. At sentencing, this Office will move for a further 1-point reduction in Lazarre's offense level pursuant to U.S.S.G. § 3E1.1(b) if the following conditions are met: (a) Lazarre enters a plea pursuant to this agreement, (b) this Office, in its discretion, determines that Lazarre's acceptance of responsibility has continued through the date of sentencing and Lazarre therefore qualifies for a 2-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and (c) Lazarre's offense level under the Guidelines prior to the operation of § 3E1.1(a) is 16 or greater.

17.    This Office and Lazarre agree that an upward adjustment of 2 levels applies because Lazarre's conduct involved the willful obstruction of the Government's investigation and prosecution into the offense of conviction and relevant conduct. See U.S.S.G. § 3C1.1.

18.    Accordingly, the parties agree that the total Guidelines offense level applicable to Lazarre is 38 (the "Total Offense Level") plus the sentence imposed on Counts Three through Five, which must be at least 24 months to be imposed consecutively to the sentence on Counts One and Two.